UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KALIAH BURNETT,<br><br>　　　　Plaintiff<br><br>v.<br><br>SYB, LLC, d/b/a Golden Heart Senior Care, et al.,<br><br>　　　　Defendants | Case No.: 2:20-cv-00029-APG-BNW<br><br>**Order Granting Defendant's Motion to Dismiss**<br><br>[ECF No. 35] |

Kaliah Burnett sues her employer, SYB, LLC, d/b/a Golden Heart Senior Care (Golden Heart) for discrimination, alleging that she was constructively discharged. After she told her employer she was pregnant, Golden Heart required she get a doctor's note, reduced her hours on two occasions, and removed her from its online scheduling system. She asserts claims for constructive discharge and for intentional infliction of emotional distress (IIED). Golden Heart moves to dismiss the first amended complaint (FAC) because Burnett has failed to allege facts that amount to constructive discharge or IIED. I agree and thus dismiss her claims with leave to amend.

**I.　BACKGROUND**

Burnett began working for Golden Heart as a full-time personal care giver on May 24, 2018. ECF No. 30 at 3. About two months later, she told her employer she was pregnant. *Id.* In response, Burnett's superiors told her she would need a doctor's note clearing her to continue working for Golden Heart. *Id.* Burnett's weekly work schedule was then changed from thirty-five hours to five hours. *Id.* On August 3, Burnett presented a note from her doctor and Golden

Heart then returned her to her regularly scheduled hours. *Id.* But after less than a week, her hours were again "substantially reduced." *Id.* On August 11, Burnett discovered she could not access her schedule and was locked out of Golden Heart's electronic scheduling system. *Id.* She immediately quit. *Id.* at 3-4.

In May 2019, Burnett filed a charge of discrimination with the Nevada Equal Rights Commission (NERC), and she received a right to sue letter on September 4, 2019. *Id.* at 4. She filed this lawsuit in state court and Golden Heart removed it to this court. ECF Nos. 1; 1-1. I previously dismissed the original complaint without prejudice. ECF No. 29. Burnett then filed her FAC. ECF No. 30.

The FAC asserts two claims against Golden Heart. First, Burnett alleges that Golden Heart constructively discharged her because she was pregnant, in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and corresponding Nevada law. ECF No. 30 at 4-5. Second, she brings an IIED claim because of the alleged constructive discharge. *Id.* at 5-6.

Golden Heart moves to dismiss the constructive discharge claims because Burnett has not sufficiently alleged an intolerable work environment or a continuous pattern of discrimination, and Burnett did not give Golden Heart a chance to correct the alleged discrimination. Golden Heart moves to dismiss the IIED claim because a reduction in hours is not extreme and outrageous conduct. Burnett responds that she had protested the repeated reduction of scheduled hours and that no reasonable person could survive with so few hours or would stay in a job after being rebuffed. She also argues that she is not obligated to engage in Golden Heart's hypotheticals about whether she needed to give them a chance to correct the discrimination. For the IIED claim, Burnett responds that a flagrant violation of discrimination law is extreme and outrageous.

## II. ANALYSIS

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

I apply a two-step approach when considering a motion to dismiss. *Iqbal*, 556 U.S. at 679. First, I accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id*. Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Id*. Mere recitals of the elements of a cause of action, supported only by conclusory statements, are not sufficient. *Id.* at 678. Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when it alleges facts that allow me to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit me to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citation omitted). This is a context-specific determination that requires drawing on my judicial experience and common sense. *Id*.

### A. Title VII Constructive Discharge Claim

Title VII prohibits discrimination based on sex. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). The Pregnancy Discrimination Act expanded Title VII protections to

3

discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *Young*, 575 U.S. at 212. The Pregnancy Discrimination Act requires employers to treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

For a constructive discharge claim, a plaintiff must allege such "intolerable and discriminatory working conditions" that when "looking at the totality of circumstances, 'a reasonable person in the employee's position would have felt that [s]he was forced to quit.'" *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (quoting *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984)). There must be "aggravating factors, such as a continuous pattern of discriminatory treatment." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990) (internal quotations omitted) (finding constructive discharge when the employee's merit pay step was decreased twice, with one occurring the day he left work because of a stress reaction).

To allege a constructive discharge claim, a plaintiff must meet a higher standard than a discrimination claim; the conditions must be "sufficiently extraordinary and egregious." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (holding that "trivial" issues and "routine" scheduling conflicts do not meet the constructive discharge standard). Constructive discharge claims have a high bar because "federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether [her] employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007).

Nevada law also recognizes constructive discharge and has adopted the same standard as the Ninth Circuit. Nev. Rev. Stat. § 613.330; *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 553 (Nev. 1995) ("A constructive discharge has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign." (citing *Satterwhite*, 744 F.2d at 1381)).

Burnett alleges that she was constructively discharged after telling Golden Heart she was pregnant because Golden Heart (1) required her to provide a doctor's note clearing her to work, (2) significantly reduced her hours until she provided a doctor's note, (3) again reduced her hours without explanation following her providing a doctor's note, and (4) locked her out of Golden Heart's online scheduling system so she could not view her schedule. Burnett alleges that these actions were discriminatory based on her pregnancy. Golden Heart responds that Burnett has not been constructively discharged because she failed to give Golden Heart a chance to correct the alleged discrimination. It also argues that Burnett's allegations fail to rise to the level of a constructive discharge because they do not amount to a hostile work environment and do not allege a sufficiently continuous pattern of discrimination.

Burnett's failure to allege that she gave Golden Heart a chance to correct the discrimination does not alone preclude her claim. A defendant can defeat a constructive discharge claim "by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of [discrimination], and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). But that is part of an affirmative defense that the defendant has the burden of proving. *Id.* The affirmative defense is also unavailable where the constructive discharge was precipitated by an "employer-sanctioned adverse action."

*Id.* at 140 (giving the examples of a humiliating demotion, extreme cut in pay, or transfer to a position where the employee would face unbearable working conditions). Resolving an affirmative defense at the dismissal stage would be premature. Further, Burnett has plausibly alleged that a reduction of hours and locking her out of the scheduling system were official employer acts. I therefore do not dismiss on the basis that Burnett failed to allege that she gave Golden Heart a chance to correct the alleged discrimination.

However, Burnett's constructive discharge claim is still insufficient. She does not allege a pattern of discrimination that a reasonable person would believe was so extraordinary and egregious that it was intolerable. *Sanchez*, 915 F.2d at 431; *Brooks*, 229 F.3d at 930. Burnett alleges that Golden Heart required her to get a doctor's note, reduced her hours for approximately two weeks, and locked her out of the scheduling system. These facts would not make a reasonable person "feel like she was forced to quit." *Watson*, 823 F.2d at 361. The short duration of approximately two weeks also indicates that these were not objectively intolerable conditions. Although courts have found constructive discharge claims over short periods of time, they usually involve more severe circumstances. *See Ford v. Alfaro*, 785 F.2d 835, 838 (9th Cir. 1986) (holding there was a constructive discharge when an employee quit the same day her supervisor accused her of reopening a labor investigation into her supervisor, said he would "get even" with her, and stated that he did not want her to work for the company anymore). Additionally, while Burnett is not necessarily required to allege that she gave her employer an opportunity to respond, her failure to allege that she did so undermines the plausibility of her contention that the conditions were intolerable.

In her response, Burnett contends that she protested the reduced hours and was rebuffed. ECF No. 40 at 6, 8-9. But she did not include these facts in her FAC even though I had indicated

in my prior order that these allegations could potentially support her claim. ECF No. 29 at 4. She also argues that her hours had never been reduced until she told Golden Heart about her pregnancy. ECF No. 40 at 6, 8. But she did not allege that in the FAC either. As I stated before, I cannot consider facts not alleged in the complaint. *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). From the facts alleged, the totality of the circumstances does not give rise to a claim for constructive discharge. I thus dismiss the claim.

It is not clear that amendment would be futile. I will give Burnett one final chance to amend, if she can assert sufficient facts to state a plausible constructive discharge claim. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (holding that leave to amend should be given unless the claim cannot be saved by any amendment).

**B. IIED**

A claim for IIED requires a plaintiff to prove that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress or bodily harm. *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014), *vacated on other grounds*, 136 S. Ct. 1277 (2016). To be extreme and outrageous, the conduct must be "outside all possible bounds of decency" and regarded as "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation and internal quotations omitted).

Termination of an employee, "even in the context of a discriminatory [employee] policy, does not in itself amount to extreme and outrageous conduct actionable under an [IIED] theory." *Hirschhorn v. Sizzler Restaurants Intern., Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995) (internal quotations and citations omitted). There must be additional factors to demonstrate intentional infliction of emotional distress. For example, "verbal threats, frivolous litigation, and the

withholding of retirement funds 'for the express reason of causing . . . extreme financial hardship'" have been found to be the sort of extreme and outrageous conduct that can form the basis of an IIED claim. *Okeke v. Biomat USA*, *Inc.*, 927 F. Supp. 2d 1021, 1029 (D. Nev. 2013) (quoting *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995)).

Burnett alleges that she suffered "prolonged worry and anxiety" because of her constructive discharge and loss of income. ECF No. 30 at 6. Golden Heart argues that Burnett failed to allege extreme or outrageous conduct because the only wrongful conduct alleged is reducing her hours. Burnett responds that Golden Heart's actions were a "flagrant violation of the law" that rises to the level of extreme and outrageous.

Burnett's FAC does not state a plausible IIED claim. She does not detail any actions by Golden Heart that could be considered extreme or outrageous. Burnett has not alleged "the kind of targeted, scorched-earth tactics" that raise employment discrimination to the level of IIED. *Okeke*, 927 F. Supp. 2d 1021 at 1029. Instead, she merely recites the elements of an IIED claim. This does not satisfy Rule 8's pleading standard. *Iqbal*, 556 U.S. at 678. I therefore grant Golden Heart's motion to dismiss this claim. Because it is not clear that amendment would be futile, I grant Burnett one final chance to amend this claim if facts exist to support it. *Corinthian Colls.*, 655 F .3d at 995.

**III.   CONCLUSION**

I THEREFORE ORDER that the defendant's motion to dismiss **(ECF No. 35) is GRANTED**. The first amended complaint (ECF No. 30) is dismissed without prejudice.

/ / / /

/ / / /

/ / / /

8

I FURTHER ORDER that plaintiff Kaliah Burnett may file a second amended complaint by July 23, 2021 if she can cure the defects described in this order.

DATED this 1st day of July, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE